**SO ORDERED: September 26, 2012.**



**Anthony J. Metz III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| NICHOLAS JOHN HOETMER ) | CASE NO. 10-8663-AJM-7A |
| CYNTHIA SUE HOETMER ) | |
| ) | |
| Debtors ) | |
| ———————————————— ) | |
| ) | |
| THOMAS A. KRUDY, Chapter 7 Trustee ) | |
| ) | |
| Plaintiff ) | |
| vs. ) | Adversary Proceeding |
| ) | No 12-50038 |
| ) | |
| NICHOLAS JOHN HOETMER ) | |
| ) | |
| Defendant ) | |
| ———————————————— ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter was tried before the Court on August 20, 2012. Present at the trial

was the Trustee, Thomas A. Krudy, in person and by his counsel, Lucas Sayre;

1

Nicholas Hoetmer ("Hoetmer"), the Defendant appeared in person and by his counsel, Nathan Gooden. At the conclusion of the trial, the court took the matter under advisement and instructed the parties to submit to the court additional financial records of the Debtor and case authorities.  The Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

### Background

Nicholas Hoetmer, the Defendant, currently is employed by JP Morgan Chase Bank.  He works on commission and receives an annual draw of $24,000.  Hoetmer established a 401(k) account in 1997.  Hoetmer and his wife owned a home in North Carolina as well as their main residence in Indianapolis.  As of mid-2008, the Hoetmers were in "desperate" financial shape as they had been sued over a short sale on the residence and owed $250,000 in credit card debt.  Hoetmer borrowed $50,000 from his 401(k) account on April 17, 2008.  They thereafter made significant headway in reducing their monthly debt by surrendering certain collateral and by negotiating with creditors, but still needed cash.  Hoetmer borrowed a collective $5,500 from his 401(k) account  in 5 installments in June, 2009.  On June 16, 2009, Hoetmer took a $75,000 distribution from his 401(k) account which resulted in a $16,000 tax liability.  Hoetmer deposited this $75,000 distribution into his investment account.

As of February, 2010, Hoetmer still owed $55,500 on the loans he had borrowed from his 401(k).  On February 19, 2010, a little more than 90 days before the date of his bankruptcy filing, Hoetmer used funds in his checking account and repaid $36,267.75 of the 401(k) loan balance (the "401(k) Loan Repayment").

Hoetmer and his wife, Cyndi filed their chapter 7 case about three months later

2

on June 9, 2010 (the "Petition Date") without listing the 401(k) Loan Repayment in their Statement of Financial Affairs. They later amended their Schedule C and claimed the entire balance of the 401(k) account exempt. Postpetition, between June 15th and June 23rd, Hoetmer borrowed an additional $30,022.55 from his 401(k) account. Hoetmer at trial testified that he needed a cash "buffer" to supplement his annual $24,000 draw and earned commissions, but from the financial records submitted by the parties post trial, the $30,022.55 borrowed from the 401(k) account postpetition was used to purchase investments, not to pay living expenses.

### *Discussion*

The Trustee alleges that the 401(k) Loan Repayment is a fraudulent transfer and seeks to avoid and recover it for the estate under §§ 548(a)(1)(A) and 550. 11 U.S.C. 548(a)(1)(A) allows the avoidance of any transfer of an interest in the debtor's property if the debtor made the transfer (1) within two years of the bankruptcy filing and (2) "with actual intent to hinder, delay, or defraud" another creditor. *In re Sentinel Management Group, Inc.*, 689 F.3d 855, 861 (7th Cir. 2012). [1] There is no question that the 401(k) Loan Repayment falls within the 2-year period reach-back period. Although the 401(k) Loan Repayment in essence was Hoetmer shifting funds from his checking account to his 401(k) account and not a repayment to a third party, it nonetheless qualifies as a "transfer" as that term is broadly defined under Section 101(54) of the bankruptcy code. See, *In re Pulliam,* 279 B.R. 916, 920 (Bankr. M. D. Ga. 2002) (rollover of funds from

---

[1] Compare this section with Section 548(a)(2)(B) which allows a trustee to avoid a transfer where a debtor received less than reasonably equivalent value in exchange for the transfer and was insolvent on the date the transfer was made or became insolvent as a result of the transfer. Causes of action under this section are often referred to as "constructive fraud" as this section does not require proof of a debtor's intent, unlike Section 548(a)(1)(A) – the section under which the trustee brings his action here.

3

one IRA account to another is a "transfer"); *In re Dunbar*, 313 B.R. 430, 436 (Bankr. C. D. Ill. 2004) ("transfer" for Section 548 purposes is not limited to only those transfers of property that result in acquisition of some interest by a third party; it also includes conversion of non-exempt property to exempt property).[2]

"The law tolerates a certain amount of pre-bankruptcy exemption planning" and "it is not *per se* fraudulent for a debtor to convert nonexempt property to exempt property on the eve of a bankruptcy filing". *In re Hall*, 464 B.R. 896, 904 (Bankr. D. Idaho, 2012). While conversion of nonexempt property to exempt property is not per se fraudulent, it is not immune from scrutiny either. A trustee bears the burden of proving that the transfer was fraudulent under §548(a)(1)(A). *Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002). Among the elements to be proven is that the debtor made the transfer with the actual intent to hinder, delay or defraud creditors. This inquiry focuses on the debtor's state of mind; "neither malice nor insolvency are required". *In re Cahillane*, 408 B.R. 175, 191 (Bankr. N. D. Ind. 2009). The debtor's state of mind must be such that the transfer was made with the specific intent of preventing creditors from reaching their assets or to prevent a creditor from collecting a debt. *Sentinel Management*, 689 F.3d at 861-862. Section 548(a)(1)(A)'s phraseology "with intent to hinder, delay or defraud" likewise appears in the denial of discharge provision under Section 727(a)(2). Because of this identical language, proof of intent under both sections is the same. See, *Cohen v. Bucci*, 103 B.R. 927, 930 (N. D. Ill. 1989)

---

[2] The *Dunbar* case was decided prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). BAPCPA amended Section 101(54) but did not substantively change the definition of "transfer".

4

(judgment previously awarded in favor of trustee on fraudulent transfer action collaterally estopped debtor from litigating "intent" under §727(a)(2)(A)); *In re Wheeler,* 444 B.R. 598, 610-11 (Bankr. D. Idaho, 2011) (trustee who proved "intent" for §548(a)(1)(A) purposes deemed to have met burden of proof for §727(a)(2)(A) denial of discharge purposes).

Since direct proof of a debtor's intent is hard to come by, actual intent may be proven by circumstantial evidence or inferences drawn from the debtor's course of conduct. *Mottaz*, 294 F.3d at 869; *In re Ciotti*, 448 B.R. 694, 701 (Bankr. W. D. Pa. 2011) (§727(a)(2)(A) action). Courts also have looked to "badges of fraud" to determine whether the debtor had the requisite intent under §548(a)(1)(A). These badges include (1) whether the debtor retained possession or control of the property after the transfer; (2) whether the transferee shared a familial or other close relationship with the debtor (3) whether the debtor received consideration for the transfer; (4) whether the debtor disclosed the transfer; (5) whether the debtor had been sued or threatened with suit before the transfer was made; (6) whether the transfer involved substantially all of the debtor's assets; (7) whether the debtor absconded and (8) whether the debtor was or became solvent at the time of the transfer. *Mottaz*, 294 F.3d at 870. *Cahillane*, 408 B.R. at 191. [3] A court also may infer intent to defraud from subsequent conduct. *Moody v. Security Pacific Business Credit, Inc*., 127 B.R. 958, 990 (W. D. Pa. 1991); *In re Costello*, 299 B.R. 882, 895 (Bankr. N. D. Ill 2003) (noting

---

[3] These "badges of fraud" vary: "[a]s the varieties of fraud are limited only by the imagination of the malign and duplicitous, no definitive list of badges exists". 5 *Collier on Bankruptcy*, ¶ 548.04[1][b], n.16, p. 548-59 (16th ed.2010).

that, for purposes of proving intent under §727(a)(2)(A), "subsequent conduct is often probative of one's intent on a prior occasion") (citations omitted).

Here, Hoemter used money from his checking account  – property that for the most part, was not exempt from the reach of creditors and would have been property of his bankruptcy estate had it remained there as of the Petition Date – and used it to pay off his 401(k) loan.  The result was a net increase in the value of his 401(k) account – property that is exempt from the reach of creditors.  Hoetmer's mere conversion of checking account proceeds to 401(K) proceeds in and of itself was not fraudulent.  However, this is not a "mere conversion" of non exempt to exempt property.  Rather, Hoetmer converted non exempt property to exempt property and then, just days after the Petition Date, reconverted that exempt property back to non exempt property.

The 401(k) Loan Repayment occurred just over ninety (90) days before the Hoetmers filed their chapter 7 case.  The Hoetmers had been in "desperate" financial shape since 2008 and had been sued over short sale on their residence.  As of the Petition Date, their liabilities exceeded their assets by approximately $800,000, with most of the liabilities having been incurred prior to February, 2010, when the 401(k) Loan Repayment occurred.  It is uncontroverted that Hoetmer retained possession and control over the funds transferred, as he merely moved them from his checking account to his 401(k) account.  Hoetmer, as the debtor, was also the "transferee".  The Hoetmers failed to disclose the 401(k) Loan Repayment on their bankruptcy schedules.  Less than a week after the Petition Date, Hoetmer "reborrowed" $30,022.55 from his 401(k) account held at JP Morgan Chase Bank.  That sum was not used to make payments on the residence in order to save it from foreclosure or for some other urgent

6

household purpose. [4]   Rather, it was used to purchase stock in Hoetmer's investment account held at Schwab. [5]  This "reborrowing" from the 401(k) account in such close proximity to the Petition Date and for a purpose other than to pay living expenses prompts the Court to find that Hoetmer's conduct both contemporaneous with and subsequent to the 401(k) Loan Repayment circumstantially proves that he made the 401(k) Loan Repayment with the intent to hinder, delay and defraud his creditors.  See, *Dunbar*, 313 B.R. at 439. [6]

The Court concludes that the Trustee has proven that the 401(k) Loan Repayment is an avoidable fraudulent transfer under §548(a)(1)(A) and that the Trustee may recover the sum of $30,022.55 for the benefit of the estate under §550.

---

[4] From the bank records submitted post trial, the debtors took a vacation to Orlando, Florida and to Gulf Shores, Alabama shortly after they filed their chapter 7 case.  The bank records also indicate an unusually large amount of money spent on eating out.  While a bankruptcy filing does not relegate debtors to an austere lifestyle, money spent on luxuries such as the expenditures here so close after the Petition Date are further circumstantial evidence of Hoetmer's intent to thwart his creditors at the time the 401(k) Loan Repayment occurred.

[5] From the financial records submitted, the Court is under the assumption that Hoetmer's exempt 401(k) account was held at JP Morgan Chase and that his nonexempt investment account was held at Schwab, such that the $30,022.55 was not used to buy stock for Hoetmer's 401(k) account. Obviously, had this sum been used to purchase stock for the 401(k) account, the outcome here may have been different.

[6] In *Dunbar*, a case with very similar facts to the facts here, the debtors repaid a 401(k) loan with funds from their checking account about 90 days before filing a chapter 7 case.  The chapter 7 trustee originally sued the debtors under §548(a)(1)(A) – the same theory used by the trustee here.  Before the case was tried, the parties settled and the debtors agreed to pay the estate a sum of money which they intended to borrow from their 401(k) account. Unfortunately, the debtors were not able to borrow said funds because they, unbeknownst to the trustee, had previously "reborrowed" $40,000 from their 401(k) account postpetition to purchase two vehicles.  The trustee thereafter amended his complaint, dropping the §548(a)(1)(A) count and alleging a single cause of action under the "constructive fraud" prong of §548(a)(1)(B).  The trustee argued that the Court consider the debtors' subsequent conduct in "reborrowing" $40,000 from their 401(k) account postpetition as proof of the debtors' intent.  The Court, in footnote 11, noted that subsequent conduct – and intent for that matter – were irrelevant under the "constructive fraud" prong of §548 and therefore entered judgment for the debtors. However, the Court in footnote 11 surmised that the trustee may have prevailed had he retained his §548(a)(1)(A) "actual intent" cause of action, as the "debtors' postpetition reborrowing of the funds in order to purchase two vehicles may have been evidence of an earlier intent to temporarily shield the monies from their creditors".

Judgment will be entered in favor of the Plaintiff/ Trustee.

**# # #**


Distribution:
Thomas Krudy, Chapter 7 Trustee
Lucas Sayre/ Paul Gresk, Attorneys for the Trustee
Nathan Gooden, Attorney for Nicholas John Hoetmer, Defendant